Barbour, J.
The general rule in regard to the transfer of sealed obligations of corporations, as well as those of *334 governments, has been much relaxed of late years. Thus we find in Wookey v. Pole, (4 B. & Ald., 1,) an exchequer bill, payable to blank, was held to be payable to the holder; and in Georgier v. Mielville, (3 B. & Cres., 45,) a like decision was made as to a bond of the Prussian government, payable to whomever should be the holder. It was proved that they were daily sold in the market, and passed from hand to hand like exchequer bills. Ch. J. Abbott said it was precisely analogous to a bank note payable to bearer, or to a bill of exchange indorsed in blank. In our own courts, bonds of states and corporations, payable, with coupons annexed, to the bearer, have repeatedly been held to be negotiable instruments, of which the title would pass by mere delivery. (State of Illinois v. Delafield, 8 Paige, 527; S. C. in Ct. of Errors, 2 Hill, 159; Fisher v. Morris Can. Co., 3 Am. Law. Reg., 423; Gould v. Town of Sterling, 1 Am. L. Reg., [N. S.] 290.) In the case of White v. The Vt. & Mass. R. R. Co., (21 How. U. S. R., 575,) bonds had been issued by the company, payable in blank, the name of no payee being inserted; and the plaintiff, before suit brought, filled the blank with his own name. Justice Nelson, in delivering the opinion of the Court, said: “As to the negotiability of this class of securities, when shown to be intended that they should possess this character by the form in which they are issued, and mode of giving them circulation, we think the usage and practice of the companies themselves, and of the capitalists and business men of the country dealing in them, as well as the repeated decisions or recognitions of the principle by Courts and Judges of the highest respectability, have settled the question.” * * “ Until the plaintiff chose to fill up the blank, he is to be regarded as holding the bonds as bearer, and held them in this character till made payable to himself or order.” So, too, in Mechanics' Bk. v. N. Y. & N. Haven R. R. Co., (reported in 4 Duer, 480,) where an assignment of stock, and, in the same instrument, a power of attorney to transfer, were executed in blank as to the name of the transferee and *335 attorney, it was held that the holder of the certificate had the right to fill the blank with his own name. In the Court of Appeals, Judge Comstock said: “ It is common to deal in this manner in the stock of corporate compar nies; and I do not say that any rule of law or of public policy is violated by it. The dealer unquestionably acquires an equitable title to the stock of his vendor.” (p. 579.)
This decision overrules that in Hibblewhite v. McMorine, (6 Mees. & Wels., 200,) as does White v. The Vt. & Mass. R. R. Co., the case of Enthoren v. Hoyle, in Exchequer Chamber, (13 Com. B. R., 373.)
We see no distinction, in principle, between the two American cases last cited and that now under consideration. Aside from judicial determinations in other cases, we cannot ignore the fact that bonds of railroad and other corporate companies, issued and payable, or assigned in blank, are daily transferred and passed from hand to hand here, by mere delivery, to the amount of millions. Thus much we are bound to know of the current commercial transactions of the country in which we live. Considering this fact, and that the obligation in this case is of the same general character as the bonds thus circulating in the market, it must be presumed that the company designed that the title should pass by delivery alone; or, in other words, that they should be negotiable by delivery; and it is equally to be inferred that the payee named in the bond intended, by his assignment in blank, to accomplish the same object; and it follows that, under the decisions last mentioned, the defendants are legally liable to the holder of the bond. Even if this were otherwise, however, we should have no hesitation in holding that the plaintiff, who has, in good faith, purchased the paper in open market, where the payee named therein must have permitted it to be placed, stands, in equity, in the place of such payee, and is equitably entitled to all his remedies as against the obligors.
The plaintiff is, therefore, entitled to a judgment upon the verdict.
*336 Bosworth, Ch. J.
The pleadings admit that the defendants made the bond sued on. In terms, it is payable to “Edward Bement, or his assigns.” At the foot of it is a writing, as follows, viz.: “ For value received, I assign this obligation to - Witness my hand and seal this 18th day of June, 1851. E. Bement. [l. s.]”
It was admitted at the trial that E. Bement’s signature was genuine, and was that of the payee and assignor named in the bond.
Enough was shown to establish, prima fade, that he sold and assigned it to some one, on the 18th of June, 1851.
George W. Brainerd (af the trial, which was on tfye 28th of May, 1862,) testified thus: “ I know the plaintiff; I am her son and agent; I bought for her the bond in suit, shown me, about eight or ten years ago; she has owned it ever since, and is the owner now; it is wholly unpaid; the interest, as appears from indorsement on the bond, is paid to August 1st, 1861. There is due to the plaintiff, upon it, the principal, one thousand dollars, and interest from August 1,1861.”
Ho objection was made to this evidence, and he was not cross-examined.
The only objection taken by the defendants was “ that the fact of its (the bond) being assigned in blank does not make it negotiable by delivery, and that some connection must be shown between said payee and the plaintiff”
Every purchaser taking a delivery of the bond, even without a written assignment of it, would thereby acquire the title of his vendor. The fact that it may not be negotiable in the sense that a note payable to bearer, or to order, and indorsed in blank is, interposes no obstacle to acquiring a title to it by purchase from the true owner.
It was proved that Bement, the payee, sold and assigned it, between ten and eleven years before the trial; it was not proved to whom he sold it. It was also proved that the plaintiff bought it eight or ten years before the trial, and had owned it ever since, but it was not proved of whom she bought it.
*337 It is a presumption of law that a person in possession of property is the rightful owner of it, when nothing appears or is shown, tending to disprove that fact.
This rule is applicable to real estate and to chattels.
The plaintiff having proved a sale of the bond by the payee named on it, and an assignment of it, in blank, and a purchase of it by her, and as is fairly inferable from the testimony, possession as such purchaser, with a claim of ownership for eight or ten years prior to the trial, the only just inference is that no other person has, or pretends to have, or during these eight or ten years has claimed to have, any property in it.
And there being nothing shown, or attempted to be, to overcome or rebut this inference, the plaintiff was entitled to a verdict.
Reaching this conclusion, is not carrying the doctrine of presumption to the extent that it was enforced in Fatman v. Lobach, (1 Duer, 354.)
It is not necessary to hold that a third person, being the true owner, could not reclaim the bond from the plaintiff, even if she were a bona fide purchaser. But all fair and reasonable presumptions, on the case as presented, are that she owns the bond.
The plaintiff should have a judgment on the verdict.